## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| YATIKA STARR FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-19-864-D |
| | ) | |
| BASELINE PROPERTIES, LLC, and | ) | |
| JOHN RICHERT, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Plaintiff's Motion in Limine to Exclude the Purported General VARA Waiver [Doc. No. 58], which is fully briefed and at issue.[1] Plaintiff seeks statutory damages under the Visual Artists Rights Act ("VARA"), asserting that Defendants destroyed the mural he created at 1219 and 1221 N. Classen Boulevard in Oklahoma City ("1219 Mural") by intentionally painting over it. *See* 17 U.S.C. § 106A(a). Defendants assert that Plaintiff waived his VARA rights by signing a written document at the time of the mural's creation. Plaintiff seeks to exclude any evidence of the waiver, arguing that Defendants cannot lay a proper foundation under FED. R. EVID. 901, and that the waiver is irrelevant and prejudicial under FED. R. EVID. 401, 402, and 403.

---

[1] Defendants filed an Objection and Response to Plaintiff's Motion in Limine [Doc. No. 82] and a Trial Brief [Doc. No. 72] that also discusses the issues. The Court reviewed both.

**BACKGROUND**

In August 2014, the building owners at 1219 and 1221 N. Classen Boulevard and their tenants discussed the idea of having a mural painted on the north wall of the building. Subsequently, they formed a committee, known as the 1219 Creative, which issued a Call-for-Mural-Artists on the 1219 Creative website. Kyle Golding was the committee member who "manag[ed] the process," while the other committee members contributed to the commission payment. Golding's Dep. Tr. at 53 [Doc. No. 82-3 at 2]. Plaintiff was selected as the winner of the Call-for-Mural-Artists. Consistent with this process, 1219 Creative and Plaintiff applied for a permit with The City of Oklahoma City ("the City"). Defendants represent that the application materials included a permit application signed by the building's owner at the time along with a signed VARA waiver by Plaintiff. The signed waiver is attached to Plaintiff's motion as Exhibit 1. [Doc. No. 58-1].

After the mural application was approved, Plaintiff painted the mural in November 2014, and was paid $5,000.00 by 1219 Creative for his work. In 2017, Defendants purchased the building at 1219 and 1221 N. Classen Boulevard. In August 2018, Defendants painted over the mural.

**DISCUSSION**

**1. Authentication**

Plaintiff contends that the waiver lacks sufficient authentication because "Defendants have not put forth any material as to the identity of the waiver's author or chain of custody," nor "attempted to elicit any testimony from any employee of [the City]

2

stating who authored the waiver, who provided it to Plaintiff, when it was received, and where it has been kept.  *See* Pl.'s Mot. at 2 [Doc. No. 58 at 2].   Although Plaintiff acknowledges that the signature on the waiver is his own, Plaintiff contends that he lacks the personal knowledge to authenticate the waiver because he believed the waiver "performed the opposite function of what Defendants" claim the waiver shows.  *Id*. at 3. Defendants contend that Plaintiff can authenticate the waiver since he signed it, and that Golding can also authenticate the waiver and confirm that he sent the signed waiver to the City.   Further, Defendants contend that they are not required to prove that Plaintiff understood the impact of the waiver at the time he signed it for the waiver to be admissible.

Rule 901(a) of the Federal Rules of Evidence provides that to authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  FED. R. EVID. 901(a).  Testimony of a witness with knowledge that an item is what it is claimed to be satisfies this requirement.  FED. R. EVID. 901(b)(1).  Further, "the establishment of a chain of custody is not necessary" for "documents that are uniquely identifiable and relatively resistant to change."  *United States v. Hernandez-Herrera*, 952 F.2d 342, 344 (10th Cir. 1991).

Here, Plaintiff acknowledges that the signature on the waiver is his own. Defendants have attached email correspondence to their response that indicates Plaintiff and Golding corresponded about the waiver, and that Plaintiff emailed the signed waiver to Golding on November 14, 2014.  [Doc. No. 82-1].  Additionally, Golding testified in his deposition that he received the waiver form from the City and sent it without modification to Plaintiff to sign.  He testified that Plaintiff signed it and returned it to him, and Golding

3

included the signed waiver in the application materials to the City.   [Doc. No. 82-3].

Although Plaintiff testified at his deposition that when he signed the waiver in November

2014, he understood it to have the "opposite" function than what he understands it to have

now, Plaintiff has acknowledged under oath that it is his signature on the waiver.   *See, e.g.,*

*Hardison v. Balboa Ins. Co*., 4 F. App'x 663, 669 (10th Cir. Feb. 16, 2001) (unpublished)[2]

(finding that Rule 901(b)(1) was satisfied by the defendant's verified interrogatory

answers).

Plaintiff's acknowledgement coupled with Golding's testimony that he received the

waiver form from the City, sent it to Plaintiff unmodified, and returned it to the City with

Plaintiff's signature meets the requirements for authentication under Rule 901.  Plaintiff's

assertion that he did not understand the impact of the waiver at the time he signed it has no

bearing on the authenticity or admissibility of the waiver at trial.

## 2.  Relevance

Citing to the House Report [Doc. No. 72-1 at 13] on the VARA statute, Plaintiff

asserts that the waiver is not transferrable to third parties, and that even if it could apply to

Defendants, that Defendants' actions were not within the scope of the waiver.   Put another

way, Plaintiff asserts that Defendants cannot benefit from the waiver; thus, the waiver is

not relevant.  Defendants contend that the portion of the legislative history on transfer of

waivers did not become final law, and that 17 U.S.C. § 106A(e) is not ambiguous on

---

[2]All unpublished opinions are cited pursuant to FED. R. APP. P. 32.1(a) and 10th CIR. R.
32.1.

whether it prohibits a subsequent building owner from receiving the benefit of a waiver. Defendants also contend that a § 113(d) building exception waiver is transferrable to a subsequent owner. *See* 17 U.S.C. § 113(d)(1).

Rule 401 states that evidence is relevant if it has "any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." FED. R. EVID. 401.  Pursuant to § 59-9350.46(F) of the Oklahoma City Municipal Code, applications for a mural permit must be submitted on an approved application form and accompanied by an "affidavit signed by the property owner giving permission to place the mural on the building" and a "statement by the applicant indicating said applicant waives any VARA rights."  Here, Plaintiff signed a document titled, "General VARA Waiver for Works of Visual Art (Mural), on November 14, 2014.  [Doc. No. 58-1].  In the waiver, Plaintiff acknowledges his rights of attribution and integrity conferred by 17 U.S.C. § 106A(a), and that his work of art will be subject to the rigors of Oklahoma weather.  *Id*.  He also acknowledges that the mural "may be destroyed, either by weather or a necessity otherwise occasioned, which requires its removal from the building."  *Id*.  According to the waiver, Plaintiff "waives his VARA rights with respect to the uses specified below by the neighborhood or district association and [the City], or anyone duly authorized by [the City] . . . ."  *Id*.  The specified uses identified are "Artistic enhancement of a structure in the neighborhood or district association."  *Id*.

VARA's legislative history includes H.R. Rep. No. 101-514, at 6928–29 (1990), which provides that the waiver provision in § 106A(e) "applies only to the specific person to whom waiver is made," and that a "person may not subsequently transfer the waiver to

a third party.  Any third parties must obtain waivers directly from the author."  [Doc. No. 72-1 at 13].  It further provides that the "author must expressly agree to the waiver in a written instrument, and must sign that instrument.  The writing must specifically identify the work and the uses of the work to which the waiver applies.  The waiver will apply only to that work and those uses.  The bill does not permit blanket waivers."  *Id*. at 6929.

Section 106A(e)(1) provides that the rights of attribution and integrity conferred by subsection (a) "may not be transferred, but those rights may be waived if the author expressly agrees to such waiver in a written instrument signed by the author.  Such instrument shall specifically identify the work, and uses of that work, to which the waiver applies, and the waiver shall apply only to the work and uses so identified."  17 U.S.C. § 106A(e)(1).  As evidenced, the prohibition on the transfer of waivers discussed in the House Report is not explicitly embodied in § 106A(e).  *See also* David Nimmer, *The Visual Artists Rights Act of 1990*, C 579 ALI-ABA 149, 164 (March 20, 1991) (noting that, although helpful, the prohibition on transfer of waivers in the House Report is not explicitly embodied in the statute). Nimmer noted in note 150 that it is arguable whether the recipient of a waiver, by subsequent conveyance of the waiver to another, has engaged in a prohibited transfer.  *See Id*. at 164, n.150.  Nonetheless, Nimmer also noted that, "in a different posture, the legislative history approves transfer of a waiver vis-à-vis a certain structure."  *Id*. (citing n.121, *supra*).

This "other posture" that Nimmer referenced involves artwork incorporated into buildings, i.e., the building exception. Defendants have also asserted the building exception as a defense.  Section 113(d)(1) states that when "a work of visual art has been incorporated

in or made part of a building in such a way that removing the work from the building will cause the destruction, distortion, mutilation, or other modification of the work as described in section 106A(a)(3), and the author consented to the installation of the work in the building . . . in a written instrument . . . signed by the owner of the building and the author and that specifies that installation of the work may subject the work to destruction, distortion, mutilation, or other modification, by reason of its removal, then the rights conferred by paragraphs (2) and (3) of section 106A(a) shall not apply."  17 U.S.C. § 113(d)(1).  Here, according to the legislative history, the agreement would extend "to all subsequent owners of that building." H.R. Rep. No. 101-514, at 6930.  According to Nimmer, this "construction stands in contrast to the House Report's general posture vis-à-vis transfers of waivers."  Nimmer, *supra*, at n.121.  Section 113(d)(1), like 106A(e)(1), makes no reference to transfers or subsequent building owners.  Additionally, neither party cites to any case law on the issue of transfer of waiver, nor has the Court found any.  Nor does either side assert ambiguity of § 106A(e)(1) or § 113(d)(1).

When the plain language of the statute is clear, and neither party asserts ambiguity, Congress' clear intent controls and the Court may not look past the statute to its legislative history.  *See, e.g., St. Charles Inv. Co. v. Comm'r of Internal Revenue*, 232 F.3d 773, 776 (10th Cir. 2000) ("Where the language of the statute is plain, it is improper for this Court to consult legislative history in determining congressional intent.").  There is no prohibition on the transfer of waivers explicitly embodied in § 106A(e).  Likewise, § 113(d)(1) contains no prohibition on transfer to subsequent building owners.   Thus, the Court finds that Plaintiff's VARA waiver is relevant to the question of whether Plaintiff consented to

7

the installation of the mural in the building knowing that such installation could subject the mural to destruction, distortion, mutilation, or other modification, by reason of its removal. 17 U.S.C. § 113(d)(1).

### 3.  Probative Value

Finally, Plaintiff's assertion that such evidence fails the Rule 403 balancing test is rejected.  Rule 403 generally favors the admission of evidence, and exclusion under the rule is an extraordinary remedy that should be used sparingly.  *See United States v. Dennis*, 625 F.2d 782, 796 (8th Cir. 1980); *United States v. Meester*, 762 F.2d 867, 875 (11th Cir. 1985).  Plaintiff has failed to show that the probative value of such evidence is substantially outweighed by any of the dangers mentioned in Rule 403.

### CONCLUSION

Based on the foregoing, Plaintiff's Motion in Limine to Exclude the Purported General VARA Waiver [Doc. No. 58] is **DENIED**.

IT IS SO ORDERED this 7th day of May 2021.

_____

TIMOTHY D. DeGIUSTI
Chief United States District Judge