# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| YATIKA STARR FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-19-864-D |
| | ) | |
| BASELINE PROPERTIES, LLC, and | ) | |
| JOHN RICHERT, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants' Second Motion for Summary Judgment [Doc. No. 95]. Plaintiff filed a response in opposition [Doc. No. 97], and Defendants filed a reply [Doc. No. 98]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff seeks statutory damages under the Visual Artists Rights Act ("VARA"), asserting that Defendants destroyed the mural ("1219 Mural") he created by painting over it. *See* 17 U.S.C. § 106A(a). Defendants move for summary judgment on the grounds that Plaintiff waived his VARA rights by signing a written document at the time of the mural's creation, and that the mural was subject to the building exception under VARA.

## STANDARD OF DECISION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (quoting FED. R. CIV. P.

56(a)). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). At the summary judgment stage, the Court views the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Williams v. FedEx Corp. Services*, 849 F.3d 889, 896 (10th Cir. 2017).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant meets that burden, the nonmovant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671; *see also* FED. R. CIV. P. 56(c)(1)(A). To accomplish this, the nonmovant must identify facts by reference to the pleadings, depositions, other discovery materials, exhibits, or affidavits. *See Id.* The Court is not limited to the cited materials, but rather may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court's inquiry is whether the facts and evidence of record present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Unsupported conclusory allegations are not sufficient to defeat summary judgment. *Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999).

## DISCUSSION

**Statement of Facts**[1]

In August 2014, a committee known as the 1219 Creative issued a Call-for-Mural-Artists to have a mural painted on the building at 1219 and 1221 N. Classen Boulevard in Oklahoma City. Plaintiff began painting the 1219 Mural in October 2014, and finished it in November 2014. The 1219 Mural is a work of recognized visual art by a recognized muralist.

In 2017, Defendant Baseline Properties, LLC ("Baseline"), purchased 1219 N. Classen. In 2018, Baseline purchased the building at 1221 N. Classen. In September 2018, Defendants, as the persons in possession and control of the building, authorized the 1219 Mural to be painted over.

Prior to creating the 1219 Mural, as a requirement of the permitting and approval process with the City of Oklahoma City ("the City"), Plaintiff executed a document titled "General VARA Waiver for Works of Visual Art (Mural)" ("Waiver"). In the Waiver, Plaintiff acknowledges his rights of attribution and integrity to the 1219 Mural conferred by 17 U.S.C. § 106A(a), and that his work of art will be subject to the rigors of Oklahoma weather. Plaintiff confirmed at his deposition that when he executed the Waiver he handwrote the name of the mural as "TBD." Plaintiff also acknowledges in the Waiver that the mural "may be destroyed, either by weather or by a necessity otherwise occasioned,

---

[1] This statement includes material facts presented by both parties that are supported as required by FED. R. CIV. P. 56(c)(1). If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide necessary support, the assertion is disregarded. All facts are stated in the light most favorable to Plaintiff.

which requires its removal from the building." [Doc. No. 95-1]. Additionally, the Waiver states that Plaintiff "waives his VARA rights with respect to the uses specified below by the neighborhood or district association and [the City] or anyone duly authorized by [the City.]" *Id.* The Waiver describes uses as "artistic enhancement of a structure in the neighborhood or district association." *Id.*

Kyle Golding, principal of 1219 Creative, and Plaintiff corresponded by email about the Waiver. Plaintiff emailed the signed Waiver to Golding on November 14, 2014. Golding testified in his deposition that Plaintiff signed the Waiver and returned it to him, and Golding included the signed Waiver in the application materials to the City. Also included in the application packet was an Application for Arts Commission Approval dated November 6, 2014, signed by the then-owner of the building, J.B. Askins, and Rick Bewley. A Sign Permit Application dated November 17, 2014 was also among the application materials. It was signed by Rick Bewley, owner of Art Fusion Studio on Western Avenue in Oklahoma City and a member of 1219 Creative.

The Application for Arts Commission Approval states above Askins' signature that "[a]ny agreement made by the applicant regarding this proposal will be binding upon me." [Doc. No. 95-4 at 9]. Rick Bewley is listed as the applicant.

Section 59-9350.46(F) of the Oklahoma City Municipal Code requires a VARA waiver from the artist and an "affidavit signed by the property owner giving permission to place the mural on the building" to receive a permit for the mural.

The 1219 Mural was not removable from the building without distortion, mutilation, or destruction. Plaintiff testified in his deposition that he did not think about or study the

4

Waiver when Golding sent it to him, but that he simply signed it and sent it back.  Plaintiff

learned later when taking the City's mural permitting class that the "waiver isn't really

conducive to the artist's rights" and "limits protection of [the mural] physically."  Pl.'s

Dep. Tr. at 37 [Doc. No. 95-2 at 4].

**Analysis**

I.      **The Waiver signed by Plaintiff was part of the permit process with the City, and was in favor of the City, not the building owner.  Thus, Defendants cannot claim the benefit of the Waiver.**

VARA was added to the copyright laws in 1990 and grants visual artists certain

moral rights in their work.  17 U.S.C. § 106A(a); *Castillo v. G&M Realty L.P.*, 950 F.3d

155, 163 (2d Cir. 2020).  The statute offers artists the right to prevent any destruction of

their work if that work has achieved "recognized stature."[2]  *See id*. § 106A(a)(3)(B);

*Castillo*, 950 F.3d at 163; *Scott v. Dixon*, 309 F. Supp. 2d 395, 400 (E.D.N.Y. 2004).

However, the rights conferred by § 106A(a) "may be waived if the author expressly agrees

to such waiver in a written instrument signed by the author."  *See id*. § 106A(e)(1).  The

waiver must "specifically identify the work, and uses of that work, to which the waiver

applies, and the waiver shall apply only to the work and uses so identified."  *Id*.  "'The

purpose of the written waiver is to ensure that the author is made fully aware of the

circumstances surrounding the installation and potential removal of the work and has

nevertheless knowingly subjected the work to possible modifications that would otherwise

---

[2] The parties have stipulated that Plaintiff's 1219 Mural and Plaintiff, as an artist, have attained the sufficient level of recognized stature to qualify for VARA protection.  The parties have also stipulated that Defendants' painting over the 1219 Mural constitutes destruction of the work.  *See* Am. Final Pretrial Report [Doc. No. 88 at 3].

be actionable under section 106A.'" *Cohen v. G&M Realty L.P.*, 320 F. Supp. 3d 421, 435–36 (E.D.N.Y. 2018) (quoting H.R. Rep. No. 101-514, at 21).

Pursuant to § 59-9350.46(C) of the Oklahoma City Municipal Code, murals must be submitted to the City's Arts Commission for review and comment. Applications for a mural permit must be submitted on an approved application form and should include an "affidavit signed by the property owner giving permission to place the mural on the building" and a "statement by the applicant indicating said applicant waives any VARA rights." *See id*. § 59-9350.46(F). Here, Plaintiff signed a document titled, "General VARA Waiver for Works of Visual Art (Mural), on November 14, 2014. [Doc. No. 95-1]. In the Waiver, Plaintiff acknowledges his rights of attribution and integrity conferred by 17 U.S.C. § 106A(a), and that his work of art will be subject to the rigors of Oklahoma weather. *Id*. He also acknowledges that the mural "may be destroyed, either by weather or a necessity otherwise occasioned, which requires its removal from the building." *Id*. According to the Waiver, Plaintiff "waives his VARA rights with respect to the uses specified below by the neighborhood or district association and The City of Oklahoma City, or anyone duly authorized by The City of Oklahoma City . . . ." *Id*. The specified uses identified are "Artistic enhancement of a structure in the neighborhood or district association." *Id*.

Plaintiff asserts that Defendants cannot benefit from the Waiver because there is no evidence of record that Defendants' decision to paint over the 1219 Mural was at the behest or direction of the neighborhood or district association and the City, or by someone duly authorized by the City. Plaintiff asserts that the Waiver should be strictly construed and

that there is no evidence of record that Defendants' whitewashing of the mural was an "artistic enhancement of a structure in the neighborhood or district association."

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). "[A] waiver of statutory rights is not to be lightly inferred," and must be "clear and unmistakable." *Indianapolis Power & Light Co. v. N.L.R.B.*, 898 F.2d 524, 529 (7th Cir. 1990) (internal citation and quotation marks omitted). "[The Court] will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be clear and unmistakable." *Metro. Edison Co. v. N.L.R.B.*, 460 U.S. 693, 708 (1983) (finding that union officials had not waived their specific right to strike concerning an unfair labor practice where the bargaining agreement included a general no-strike clause). According to the "well-established principles of waiver . . . a waiver must be clear and unequivocal, as waivers are never to be lightly inferred." *Mooney v. City of New York,* 219 F.3d 123, 131 (2d Cir. 2000) (internal quotation marks and citation omitted); *see also Torrez v. Pub. Serv. Co. of New Mexico, Inc.*, 908 F.2d 687, 689 (10th Cir. 1990) (waivers of federal rights are not to be inferred lightly, and must be knowing and voluntary).

An artist's waiver of his VARA rights must also be strictly construed. *See Martin v. City of Indianapolis*, 982 F. Supp. 625, 636 (S.D. Ind. 1997), *aff'd*, 192 F.3d 608 (7th Cir. 1999) ("[W]aiver of an artist's rights under VARA must be specific as to use and should be strictly construed.") (citing 3 Nimmer on Copyright § 8D.06D at 8D–84 (1997)).

*Martin* is instructive of the strict construction applied to VARA waivers under §
106A(e)(1). *Martin*, 982 F. Supp. at 636. The court there denied the defendant's summary
judgment motion because the waiver contemplated only the removal of the artist's work,
and not destruction of the involved sculpture. *Id*. at 636–37 (VARA waiver "must be
specific as to use and should be strictly construed"); *see also Tobin v. Trinity Church*, 735
F. App'x 32, 33 (2d Cir. Aug. 23, 2018) (finding that the plaintiff had "expressly agreed"
to relocation of the sculpture as a "use of his work," in conformance with the waiver
requirements of VARA under § 106A(e)(1)); *Tobin v. The Rector*, No. CIV-17-2622, 2017
WL 5466706, at *4 (S.D.N.Y. Nov. 14, 2017) ("Unless the artist expressly waives [his
VARA rights] in writing, these statutory rights transcend third-party ownership and
contractual rights." (citing *Phillips v. Pembroke Real Estate, Inc*., 459 F.3d 128, 133 (1st
Cir. 2006)).

The language of a waiver, if clear and unambiguous, is the only evidence of its
meaning and must be enforced as a matter of law. *See, e.g., Anderson v. Eby*, 998 F.2d
858, 862 (10th Cir. 1993); *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714–15 (7th Cir.
2009) (looking no further than the waiver and finding that a waiver signed by a female
employee as part of a buyout agreement with her employer unambiguously released the
employer from any liability for the employee's Title VII sexual harassment and
discrimination claims). Here, neither party asserts in the instant summary judgment record
that the Waiver is ambiguous; thus, finding no ambiguity in the essential terms of the
Waiver, the Court looks only at the four corners of the document to ascertain the intent of
the parties.

Applying these well-established principles to the Waiver in this case leads the Court to conclude that the disputed terms of the Waiver are clear, explicit, and unambiguous—it is a written waiver of Plaintiff's VARA rights exclusively in favor of the City. The Waiver was signed by Plaintiff as part of the City's permit process. It does not reference the building owner or a subsequent building owner, and cannot be fairly construed to extend to such owners.

As evidenced by the explicit language of the Waiver [Doc. No. 95-1], it was designed to protect the City's interests, not the building owner's interests. Had the building owner at the time the 1219 Mural was created desired to obtain a VARA waiver for his benefit, he certainly could have sought to obtain such a waiver of rights from Plaintiff as did the City.[3] Accordingly, given that the VARA waiver must be specific as to use and must be strictly construed, Plaintiff's general VARA waiver in favor of the City is not an effective waiver of his right to protect the 1219 Mural from destruction by a building owner or subsequent building owner. *See Martin*, 982 F. Supp. at 636–37.

The Court's conclusion finds added support from *Cohen v. G&M Realty L.P.*, 988 F. Supp. 2d 212, 227 (E.D.N.Y. 2013), in which the court noted that the building owner "did not choose to protect himself from liability by requiring VARA waivers."[4] In *Cohen*,

---

[3] VARA expressly provides that the artist may not transfer VARA rights, but it is silent regarding the transferability of a VARA waiver.

[4] *See also Castillo*, 950 F.3d at 172 (concluding that a statutory damages award would deter the building owner from future violations of VARA and would "encourage other building owners to negotiate in good faith with artists whose works are incorporated into structures"); *Pollara v. Seymour*, 150 F. Supp. 2d 393, 396, n.4 (N.D.N.Y. 2001) (noting that there was "no basis in the statute to find a general right to destroy works of art that are

the trial judge denied the defendants' motion for a new trial concluding, *inter alia*, that his

decision would not "operate as a deterrent to future building owners," but rather encourage

"future parties to negotiate VARA rights in advance, or at minimum, abide by the

[strictures] of 17 U.S.C. § 113(d), as contemplated by Congress."  *Cohen v. G&M Realty

L.P.*, Nos. CIV-13-05612, CIV-15-3230, 2018 WL 2973385, at *10, n.19 (E.D.N.Y. June

13, 2018), *aff'd*, *Castillo v. G&M Realty L.P.*, 950 F.3d 155 (2d Cir. 2020).

> **II.     Because Defendants have not submitted a written instrument signed by the building owner and Plaintiff, the building exception in 17 U.S.C. § 113(d)(1) is not applicable.**

Section 113(d)(1) provides an exception for works of visual art that are incorporated

into or made part of a building.  17 U.S.C. § 113(d)(1).  Defendants assert that the building

exception applies here. Pursuant to that subsection, when "a work of visual art has been

incorporated in or made part of a building in such a way that removing the work from the

building will cause the destruction, distortion, mutilation, or other modification of the work

. . . and the author consented to the installation . . . *in a written instrument . . . signed by

the owner of the building and the author* and that specifies that installation of the work may

subject the work to destruction, distortion, mutilation, or other modification, by reason of

its removal," the integrity rights conferred by § 106A(a) are wholly inapplicable.  *Id*.

(emphasis added).  Defendants also assert that §113(d)(1) does not require one single

---

on property without the permission of the owner"); *Carter v. Helmsley-Spear, Inc.,* 852 F. Supp. 228, 237 (S.D.N.Y. 1994) (noting that VARA does not require a work of visual art, once installed, to remain in place forever, but rather, in place only during the artist's life; a property owner may, however, seek from the artist written consent to waive his VARA rights).

document with both the building owner's signature and the artist's, and ask the Court to construe the application packet as a single document.

Although the 1219 Mural was not removable from the building without distortion, mutilation, or destruction, there is no document signed by the owner of the building and Plaintiff in which Plaintiff consents to the installation of the 1219 Mural in the building and specifies that the mural may be subject to destruction, distortion, mutilation, or other modification by its removal. Plaintiff acknowledges in the Waiver [Doc. No. 95-1] that the 1219 Mural will be subject to the rigors of Oklahoma weather and that the mural "may be destroyed, either by weather or a necessity otherwise occasioned, which requires removal from the building," but the building owner's signature is not included in this document, and the Court has determined that the scope of the Waiver here does not extend to owners of the building.

The statute explicitly requires "a written instrument" "signed by the owner of the building and the [artist]." 17 U.S.C. § 113(d)(1). "When a term goes undefined in a statute, we give the term its ordinary meaning." *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 566 (2012) (citing *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995)). The ordinary meaning of "a written instrument" is one written instrument or a single written instrument. *See, e.g., Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480 (2021) ("To an ordinary reader . . . 'a' notice [to appear] would seem to suggest just that: 'a' single document containing the required information, not a mishmash of pieces with some assembly required."); *Castillo v. G&M Realty L.P.*, 950 F.3d 155, 165 (2d Cir. 2020) ("If the artwork is incorporated 'in such a way that removing the work from the building will

cause the destruction, distortion, mutilation, or other modification of the work,' then the artist's rights may be waived *if and only if* he 'consented to the installation of the work in the building . . . *in a written instrument[]' 'signed by the owner of the building and the author.'*" (quoting § 113(d)(1)) (emphasis added). Because Defendants have not submitted a single, written instrument signed by the owner of the building and Plaintiff, the requirements of the statute have not been met and the building exception does not apply.

Accordingly, Defendants' Second Motion for Summary Judgment [Doc. No. 95] is denied. The two matters addressed in Defendants' motion related to the viability of Defendants' affirmative defenses—(1) that Plaintiff waived his VARA rights, and (2) that the building exception bars Plaintiff's right to recovery. In light of the Court's determinations herein, Defendants are precluded from advancing these affirmative defenses at trial.

## III.    Remaining Issues for Jury Trial

To prevail on his VARA claim, Plaintiff must prove that: (1) the 1219 Mural is a "work of recognized stature," and (2) that Defendants destroyed the 1219 Mural. 17 U.S.C. § 106A(a)(3)(B); *Castillo v. G&M Realty L.P.*, 950 F.3d at 165; *Scott v. Dixon*, 309 F. Supp. 2d 395, 400 (E.D.N.Y. 2004); *Martin v. City of Indianapolis*, 982 F. Supp. 625, 637 (S.D. Ind. 1997). Here, the parties stipulate that Plaintiff's 1219 Mural is of recognized stature and qualifies for VARA protection. The parties also stipulate that Defendants' painting over the 1219 Mural constitutes destruction of the work. *See* Am. Final Pretrial Report [Doc. No. 88 at 3]. There is no dispute, then, that these elements are met because

the elements are established through the parties' stipulations. As a result of this Order

precluding Defendants from advancing their affirmative defenses at trial, the issues

remaining for trial are whether Defendant John Richert, as an individual, can be held liable

in addition to Baseline, and the issue of damages.[5]

Plaintiff seeks statutory damages only. "District courts enjoy wide discretion in

setting statutory damages." *Castillo*, 950 F.3d at 171 (upholding the district court's award

of statutory damages, which were awarded following a trial and a verdict by an advisory

jury). In *Castillo*, Plaintiffs initially demanded a trial by jury, but agreed to waive a jury

near the conclusion of the jury trial, and the district court converted it to an advisory jury.

*Id*. at 163. After the Supreme Court's decision in *Feltner v. Columbia Pictures Television,*

*Inc.*, 523 U.S. 340 (1998), it appears that most circuit courts addressing the issue agree that

---

[5] Defendants assert that they are "innocent infringers" under 17 U.S.C. § 504(c)(2). *See* Am. Final Pretrial Report [Doc. No. 88 at 4]. This defense is only relevant for purposes of statutory damages; intent or knowledge is not an element of infringement. *See, e.g., Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1113 (2d Cir. 1986) (concluding that "[e]ven an innocent infringer is liable for [copyright] infringement," and that intent or knowledge is not an element of infringement; innocent infringement is only relevant to a trial court when it determines statutory damages); *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 829 (8th Cir. 1992) (concluding that the defendant's "intent is simply not relevant: The defendant is liable even for 'innocent' or 'accidental' infringements.") (internal citation marks omitted); *Maverick Recording Co. v. Harper*, 598 F.3d 193, 198 (5th Cir. 2010) (the innocent infringer defense gives the trial court discretion to reduce the minimum statutory damages from $750 to $200, if the court finds that the infringer was unaware and had no reason to believe his acts constituted infringement); *BMG Rights Mgmt. (US) LLC v. Cox Communications, Inc.*, 881 F.3d 293, 313 (4th Cir. 2018) (holding that the innocent infringement defense, which may reduce damages, is only available if the infringer can prove that he "had no reason to believe that his . . . acts constituted an infringement" under 17 U.S.C. § 504(c)(2)) (internal quotation marks omitted); *Sony BMG Music Ent. v. Tenenbaum*, 660 F.3d 487, 507 (1st Cir. 2011) (intent or knowledge is not an element of infringement).

the amount of statutory damages is an issue for a jury to determine, unless the parties waive jury trial. In *Feltner*, the Supreme Court concluded that the Seventh Amendment provides a right to a jury trial where the copyright owner elects to recover statutory damages, and that this right "includes the right to have a jury determine the *amount* of statutory damages, if any, awarded to the copyright owner." *Feltner*, 523 U.S. at 353 (emphasis in original).[6] *See also Sony BMG Music Ent. v. Tenenbaum*, 660 F.3d 487, 504–05 (1st Cir. 2011) (upholding a jury instruction that advised the jury of the maximum and minimum statutory damages awards permitted under § 504).

In addition to holding that either party has a right to a jury trial on the issue of statutory damages in a copyright infringement suit, *see Cass County Music Co.* v. *C.H.L.R., Inc.*, 88 F.3d 635, 643–44, n.7 (8th Cir. 1996), the Eighth Circuit also noted that "the willful or innocent nature of the infringement, and the concomitant adjustment of the amount of statutory damages, also would be jury questions." Likewise, the Seventh Circuit in *BMG Music v. Gonzalez*, citing to *Feltner*, held that had the plaintiff requested more than the $750 minimum, the plaintiff would have been entitled to a jury trial. *See BMG Music*, 430 F.3d 888, 892 (7th Cir. 2005).[7]

---

[6] Noting the language of § 504(c)(2), the Supreme Court in *Feltner* "discern[ed] no statutory right to a jury trial when a copyright owner elects to recover statutory damages," but did recognize a constitutional right under the Seventh Amendment. *Feltner*, 523 U.S. at 347; *see also Cass Cnty. Music Co.* v. *C.H.L.R., Inc.*, 88 F.3d 635, 641 (8th Cir. 1996) (turning to the constitutional question where the statute was silent on the issue of jury trial).
[7] *See also Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. CIV-09-970, 2014 WL 103660, at *2 (D. Colo. Jan. 10, 2014) (citing *Feltner* and finding that a plaintiff's right to a jury trial in an action for statutory damages pursuant to the Copyright Act is "assured by the Seventh Amendment."); *New Atlas Dot Com, Inc. v. Pizza Inn I-40 West, Inc.*, No. CIV-11-149-D, 2012 WL 12863152, at *8, n.6 (W.D. Okla. Nov. 9, 2012) (recognizing that the

In light of *Feltner*, *Cass*, *Tenenbaum*, and *BMG Music*, the Court finds that, absent a waiver of jury trial by the parties, the jury should determine the amount of statutory damages, if any, to be awarded to Plaintiff, and the jury should determine whether enhanced statutory damages under § 504(c)(2) are appropriate, based on the evidence presented at trial. Both parties have submitted proposed jury instructions on the issue of statutory damages, which will be considered by the Court at the appropriate time.

## CONCLUSION

Based on the foregoing, Defendants' Second Motion for Summary Judgment [Doc. No. 95] is **DENIED**, and the issues remaining for trial are narrowed as set forth herein.

**IT IS SO ORDERED** this 23rd day of June 2021.

TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

Supreme Court held in *Feltner* that the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c), including the amount itself, but noting that the parties had requested a non-jury trial); *Shive v. J&C Baseball Clubhouse, Inc.*, No. CIV-15-406, 2018 WL 1801909, at *1 (D.N.M. April 12, 2018) (citing to *Feltner*, and noting that a "trial court must defer to the jury's fact-finding function, which encompasses the amount of compensatory damages and statutory damages in a copyright infringement case.").